**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROSALIND WISE and MOONA CHOUDRY, individually and on behalf of all others similarly situated, | Civil Action No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| v. | |
| COMBE INCORPORATED, | |
| Defendant. | |

Plaintiffs Rosalind Wise and Moona Choudry ("Plaintiffs"), by and through their

attorneys, make the following allegations pursuant to the investigation of their counsel and based

upon information and belief—except as to allegations specifically pertaining to themselves and

their counsel, which are based on personal knowledge—against Defendant Combe Incorporated

("Defendant").

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Defendant's Vagisil- and

OMV!-brand "daily intimate washes" (the "Products") in the United States.

2.      Defendant manufactures and sells a variety of products for vulvar and vaginal use.

Products include vulvar washes, wipes, sprays, and deodorant powders; vulvar anti-itch creams

and wipes; vaginal yeast infection creams; vulvar anti-leak creams, wipes, and washes; and,

vaginal moisturizing lubricant.  Defendant sells these Products under the "Vagisil" and "OMV!"

labels and sells them throughout the United States, including California and New York.

3.      Defendant holds itself out as an advocate for women's health:



4.      One of Defendant's product lines is its "daily therapeutic washes," which are meant to make women "feel clean & fresh no matter what."[1]  The Products are all liquid soaps that are intended for use on the vulva, and the Products come in a variety of scents with a variety of special properties.  The Products at issue include: Vagisil Odor Block Wash, Vagisil pH Balance Wash, Vagisil Scentsitive Scents Washes,[2] Vagisil Unscented Wash, Leak Rescue Wash, Healthy Detox Wash, and OMV! All-Day Fresh Wash.

5.      On the Products' label, Defendant represents that the Products are suitable for vulvar use: the Products state they are each a "daily intimate wash," are "gynecologist tested," and appropriate "for the most intimate skin on your body."  Thus, reasonable consumers reviewing the Products' label would believe the Products are suitable for daily vulvar cleansing.

6.      However, Defendant's representation that women should use these Products on their vulva on a daily basis is false: the medical community is adamant that women should only use water to clean their vulvas and that intimate washes are harmful to women's health. Accordingly, the claim that these Products are suitable for daily vulvar use is false and misleading because the Products are not safe for vulvar use, let alone on a daily basis, and consumers would not have purchased the Products, or paid substantially less for them, had they known the claim was not true.

---

[1] *Products: Cleansing & Freshness*, VAGISIL, https://www.vagisil.com/products/cleansing-freshness (last visited Nov. 17, 2022).

[2] Vagisil Scentsitive Scents Washes are sold in several scents, including Coconut Hibiscus, Peach Blossom, Rosé All Day, Spring Lilac, White Jasmine, and Cucumber Magnolia.  *Id.*

7.     Plaintiffs are purchasers of the Products who asserts claims on behalf of themselves and similarly situated purchasers of the Product for (i) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*, (ii) violation of New York General Business Law ("GBL") § 349, (iii) violation of GBL § 350, (iv) breach of express warranty, (v) breach of implied warranty, (vi) unjust enrichment, and (vii) fraud.

## PARTIES

8.     Plaintiff Rosalind Wise is a resident of Antioch, California who has an intent to remain there, and is therefore a citizen of California.  In September 2022, Plaintiff purchased Vagisil Scentsitive Scents Spring Lilac Wash from her local Walmart in Pittsburg, California. Prior to the most recent purchase, Plaintiff Wise also purchased Vagisil pH Balance and Healthy Detox Wash.  Prior to her purchase of the Product, Plaintiff Wise reviewed the Product's labeling and packaging and saw that the Product was labeled and marketed as suitable for her vulva as a "daily intimate wash."  In purchasing the Product, Plaintiff Wise relied on Defendant's representations—as described in detail below—that the Product was suitable for daily use on her vulva.  Plaintiff Wise saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Product was suitable for daily use on her vulva.  Plaintiff Wise understood these representations to mean that the Product was suitable for use as a daily intimate wash on the vulva and that the Product was not harmful to her sexual anatomy.  Plaintiff Wise relied on these representations and warranties in deciding to purchase the Product.  Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known those representations were not true.  In making her purchase, Plaintiff Wise paid a substantial price premium due to the false and misleading claim that the product is suitable as a daily intimate wash for the vulva.  Had Plaintiff Wise known that the claim that the Product is

suitable as a daily intimate wash for the vulva was false and misleading, Plaintiff Wise would not have purchased the Product.  Plaintiff Wise did not receive the benefit of her bargain because the Product was not, in fact, suitable for use as a daily intimate wash for the vulva.

9.      Likewise, when Plaintiff Wise reviewed the Product's packaging, there were no representations or warranties that the Product was unsafe for use on her vulva or unsuitable as a daily intimate wash.  Yet, as alleged throughout this Complaint, intimate washes such as the Product are unsafe for use on the vulva.  Accordingly, Defendant's omissions were part of the basis of the bargain in that Plaintiff Wise would not have purchased the Product or would have paid substantially less for it had she known that the Product was unsafe for use on her vulva and therefore unsuitable as a daily intimate wash.  Plaintiff Wise did not receive the benefit of her bargain because the Product was not, in fact, suitable for the vulva or use as a daily intimate wash.  Further, Defendant's omission would have been material to Plaintiff Wise because it concerns the Product's safety.

10.      Plaintiff Moona Choudhry is a resident of New York City who has an intent to remain there, and is therefore a citizen of New York.  Plaintiff has purchased Vagisil Scentsitive Scents Wash in Peach Blossom, Rose All Day, Spring Lilac, White Jasmine, and Coconut Hibiscus.  As recently as August 2022, Plaintiff purchased Vagisil Scentsitive Scents Wash at a CVS in New York City.  Prior to her purchase of the Products, Plaintiff Choudhry reviewed the Products' labeling and packaging and saw that the Products were labeled and marketed as suitable for her vulva as a "daily intimate wash."  In purchasing the Products, Plaintiff Choudhry relied on Defendant's representations—as described in detail below—that the Products were suitable for daily use on her vulva.  Plaintiff Choudhry saw these representations prior to and at the time of purchase, and understood them as representations and warranties that the Products were suitable for daily use on her vulva.  Plaintiff Choudhry understood these representations to

mean Product was suitable for use as a daily intimate wash on the vulva and that the Product was not harmful to her sexual anatomy.  Plaintiff Choudhry relied on these representations and warranties in deciding to purchase the Product.  Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased the Products on the same terms had she known those representations were not true.  In making her purchase, Plaintiff Choudhry paid a substantial price premium due to the false and misleading claim that the product is suitable as a daily intimate wash for the vulva.  Had Plaintiff Choudhry known that the claim that the Products are suitable as a daily intimate wash for the vulva was false and misleading, Plaintiff Choudhry would not have purchased the Product.  Plaintiff Choudhry did not receive the benefit of her bargain because the Products were not, in fact, suitable for use as a daily intimate wash for the vulva.

11.     Likewise, when Plaintiff Choudhry reviewed the Product's packaging, there were no representations or warranties that the Product was unsafe for use on her vulva or unsuitable as a daily intimate wash.  Yet, as alleged throughout this Complaint, intimate washes such as the Product are unsafe for use on the vulva.  Accordingly, Defendant's omissions were part of the basis of the bargain in that Plaintiff Wise would not have purchased the Product or would have paid substantially less for it had she known that the Product was unsafe for use on her vulva. Plaintiff Wise did not receive the benefit of her bargain because the Product was not, in fact, suitable for the vulva and therefore unsuitable as a daily intimate wash.  Further, Defendant's omission would have been material to Plaintiff Wise because it concerns the Product's safety.

12.     Defendant Combe Incorporated is a corporation incorporated under the laws of the state of New York, with its principal place of business in White Plains, New York. Defendant markets, sells, and distributes the Products throughout the United States, including in

the States of California and New York.  Defendant manufactured, marketed, and sold the

Products during the class period.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of

the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over

100 members of the putative class, and at least one class member is a citizen of a state different

than Defendant.

14.     This Court has personal jurisdiction over Defendant because Defendant is

incorporated and maintains its principal place of business in New York.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant

resides in this District.

## FACTUAL ALLEGATIONS

A.     **The Female Anatomy**

16.     A woman's sexual anatomy is a delicate and complex system in the body.  It

produces important hormones, regulates the menstrual cycle, brings life into the world, and

makes sexual pleasure possible.  Health organizations and professionals agree that it is important

for women to take steps to protect the reproductive system from infections, diseases, and injuries

in order to prevent long-term health problems.  Many conditions and disorders affect women's

reproductive systems: issues range from having a slight impact—such as inflammation—to

causing life-altering circumstances—such as severe pain, infertility, kidney failure, or even

death.

17.     The female anatomy is composed of external and internal structures.  The entire

external structure is called the vulva, and it includes the labia, clitoris, and vaginal opening.  The

outer and inner labia, which translate to "lips," are folds of skin around the vaginal opening, and the labia serves to protect the rest of the sexual anatomy.  The vaginal opening, as the name suggests, leads to the vagina.  The vagina is the beginning of the internal sex organs, and the vagina leads to the rest of the reproductive organs—the cervix, uterus, fallopian tubes, and ovaries.  These internal organs control the release of hormones, the menstrual cycle, and a woman's ability to have a baby.

18. A representation of the external structure:[3]



//

//

//

//

//

//

_____

[3] *What are the parts of the female sexual anatomy?*, PLANNED PARENTHOOD (last visited Nov. 4, 2022), https://www.plannedparenthood.org/learn/health-and-wellness/sexual-and-reproductive-anatomy/what-are-parts-female-sexual-anatomy.

19.     A representation of the internal structure:[4]



20.     Female anatomy has evolved to be self-cleaning.[5]  As a delicate environment, the vagina is constantly working to stay lubricated, maintain its pH balance, and keep good versus bad bacteria in check.[6]  The organs self-clean through discharge, a natural shedding of fluid from the uterus, cervix, and vagina, which changes in consistency and color throughout the menstrual cycle.[7]  The vagina also has a natural microbiome (*i.e.*, a community of healthy bacteria) that helps regulate the vaginal pH and wards off health problems, such as human papillomavirus infections, bacterial vaginosis, or HIV.[8]

---

[4] *Id.*

[5] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[6] Korin Miller, *Ob/Gyns Explain That Stuff in Your Underwear at the End of the Day*, SELF (Jan. 28, 2018), https://www.self.com/story/ob-gyns-decode-discharge.

[7] *Id.*

[8] *Bad Bugs: The Vaginal Microbiome and Cancer*, THE UNIVERSITY OF ARIZONA HEALTH SCIENCES (Oct. 25, 2019), https://healthsciences.arizona.edu/tomorrow/bad-bugs-vaginal-microbiome-and-cancer; Stephanie Watson, *Everything You Need to Know About Maintaining*

21.     Because the female sex organs self-clean, gynecologists, health agencies, medical schools, and medical associations all advise women to only use plain warm water to clean the vagina and vulva.[9]  For example, the U.S. Department of Health & Human Services' Office on Women's Health advises women to "[u]se warm water only to clean the outside of [the] vagina. [Women] do not need to use soap."[10]  The American College of Obstetricians and Gynecologists recommends that women "[u]se plain warm water to clean the vulva."[11]  The Mayo Clinic explains that "[a] woman only needs to clean her vagina with warm water.  Yes, warm water. Many women may not realize that the vagina has a very acidic environment, which naturally protects against bacteria."[12]  The University of Iowa Hospitals and Clinics specifically states: "**Do not** use soap directly on the vulvar skin.  Use warm water."[13]

22.     Not only is soap unnecessary to maintain a clean vulva and vagina, but introducing chemicals (*e.g.*, through soap) to such a delicate system is hazardous.  The vagina

---

*Your Vaginal pH Balance*, HEALTHLINE (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph.

[9] *See* Office on Women's Health, *Bacterial Vaginosis: how can I lower my risk of BV?*, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, https://www.womenshealth.gov/a-z-topics/bacterial-vaginosis (last visited Nov. 17, 2022); *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited Nov. 17, 2022); Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene; *Vulvar Skin Care Guidelines*, UNIVERSITY OF IOWA HOSPITALS & CLINICS (Dec. 2021), https://uihc.org/educational-resources/vulvar-skin-care-guidelines.

[10] Office on Women's Health, *Bacterial Vaginosis: how can I lower my risk of BV?*, U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, https://www.womenshealth.gov/a-z-topics/bacterial-vaginosis (last visited Nov. 17, 2022).

[11] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited Nov. 17, 2022).

[12] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

[13] *Vulvar Skin Care Guidelines*, UNIVERSITY OF IOWA HOSPITALS & CLINICS (Dec. 2021), https://uihc.org/educational-resources/vulvar-skin-care-guidelines (emphasis added).

and portions of the vulva are mucous membranes and thus are capable of secreting and absorbing fluids at a higher rate than regular skin.[14]  Researchers have even explored the possibility of delivering drugs vaginally because of the organ's ability to rapidly absorb chemicals without metabolizing them.[15]  However, although rapid absorption may be helpful when administering medication, it poses serious issues when a woman's vagina and vulva are exposed to harmful chemicals.

23.    The American College of Obstetricians and Gynecologists explains that "[s]oaps and detergents can change the normal balance of organisms inside the vagina."[16]  The Mayo Clinic echoes this warning: "[a]dding chemicals, including anti-bacterial soaps, alters the normal eco-system and can allow growth of [bad] bacteria and yeast."[17]  One study even found that women who use feminine hygiene products are approximately three times more likely to experience an adverse health condition (*e.g.*, bacterial vaginosis, yeast infection, urinary tract infection, or sexually transmitted infection).[18]

24.    Simply put, the medical community warns that using soap can cause irritation or alter sex organs' self-regulating eco-system, leading to vaginitis, bacterial infections, yeast infections, or other forms of diseases.[19]

---

[14] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[15] *Id.*

[16] *Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited Nov. 17, 2022).

[17] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

[18] Sara E. Crann et al., *Vaginal Health and Hygiene Practices and Product Use in Canada: a National Cross-sectional Survey*, 18 BMC WOMEN'S HEALTH 52 (2018), https://bmcwomenshealth.biomedcentral.com/articles/10.1186/s12905-018-0543-y.

[19] *See Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited Nov. 17,

25.     Even more concerning, soaps created to specifically clean the vulva and/or vagina contain chemicals that are known to be harmful or even toxic.  In 2013, Women's Voices for the Earth ("WVE"), released a report detailing how feminine hygiene products use certain ingredients that are known or suspected to be harmful to the human body.[20]  The report discussed how the female anatomy rapidly absorbs chemicals, which is all the more reason to be concerned by the ingredients companies put into the feminine hygiene products.[21]

26.     The report, aptly titled "Chem Fatale," listed the following ingredients as causes for potential health effects: Benzethonium Chloride, D&C Red 33, Ext. D&C Violet #2, FD&C Yellow #5, Diazolidinyl Urea, DMDM Hydantoin, Fragrance, Methylchloroisothiazolinone, Methylisothiazolinone, and Quaternium-15.[22]  These ingredients can cause allergic rashes, release formaldehyde (which can cause cancer), inhibit the growth of healthy vaginal bacteria, and act as endocrine disruptors.[23]

27.     Although some rashes caused by harmful chemicals may clear without treatment from a healthcare professional, infections typically do not improve on their own.  Infections often require antibiotics or prescription antifungal medications.  However, endocrine disruptors ("endocrine-disrupting chemicals" or "EDCs") give much of the medical community pause.

---

2022); Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene.

[20] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A72 (2014).

[21] *Id.*

[22] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

[23] *Id.*; *Intimate Care Product Testing: Impacts on Healthy Lactobacilli*, WOMEN'S VOICES FOR THE EARTH, https://womensvoices.org/product-testing-impacts-lactobacilli/ (last visited Nov. 17, 2022).

EDCs can cause developmental malformations, interfere with reproduction, increase risk of cancer, and disturb the immune and nervous system functions.[24]

**B.      The Feminine Hygiene Product Market**

28.      Despite experts' advice to only use water to clean the vulva because scientific evidence demonstrates chemicals can lead to serious problems, companies such as Defendant have developed and heavily marketed "intimate washes" for the vulva and vagina.  In the United States alone, women spend over $2 billion a year on feminine hygiene products, which include tampons, washes, sprays, powders, and wipes.[25]  Globally, the feminine hygiene products market is expected to grow from $38.18 billion in 2021 to $54.52 billion in 2028.[26]

29.      Medical professionals and researchers note that women feel a social pressure to obtain an "unrealistic standard of what a vulva and vagina should smell like, look like, [and] feel like," which fuels this feminine hygiene product market.[27]  "People with vulvas and vaginas are spending their money chasing after an ideal that's not rooted in reality or being made to think that their normal, healthy bodily functions are somehow pathologic and need to be addressed."[28]

30.      Just last year, for instance, Defendant introduced a new line of intimate washes aimed at teenage girls—OMV!  In marketing to teenagers, Defendant used "cutesy packaging and [] phrases on its website and social media that might sound familiar to younger generations"

---

[24] *What Is Endocrine Disruption?*, U.S. ENVIRONMENTAL PROTECTION AGENCY (March 7, 2022), https://www.epa.gov/endocrine-disruption/what-endocrine-disruption.

[25] Wendee Nicole, *A Question for Women's Health: Chemicals in Feminine Hygiene Products and Personal Lubricants*, 122(3) ENVIRONMENTAL HEALTH PERSPECTIVES A71, A71 (2014).

[26] *Feminine Hygiene Products Market Size, Share & COVID-19 Impact Analysis, By Product Type, Distribution Channel, and Regional Forecast, 2021-2028*, FORTUNE BUSINESS INSIGHTS (Sept. 2021), https://www.fortunebusinessinsights.com/feminine-hygiene-products-market-103530.

[27] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/ (quoting Dr. Fatima Daoud Yilmaz).

[28] *Id.*

(*e.g.*, "Why not 'level-up' your teen's 'self-care routine' and enhance their 'glow-up'?").[29]

Gynecologists and other women's health experts expressed outrage in response to the new line.

Dr. Jen Gunter, a gynecologist and contributor to The New York Times, wrote on Twitter: "Hey

@vagisil going to call you out here for this predatory line of products aimed at teen girls."[30]  Dr.

Staci Tanouye, a gynecologist in Florida, said in a TikTok video, "How many times have we

talked about how this industry preys on the insecurities of women?  And now we are directly

targeting teens to tell them they're dirty."[31]  Dr. Heather Irobunda, an ob-gyn at NYC Health +

Hospitals said, "Not only does it teach girls at a young age that you should probably smell like a

Creamsicle, it also has these young girls question what exactly is a normal smell down there."[32]

Dr.  Irobunda continues, "This is a purity culture.  It's infantilizing—you have to be pure, clean,

fresh, natural.  These products always make it sound like you're supposed to be a contestant on a

game show called 'America's Next Virgin Bride' or something."[33]

  31. These modern-day feminine hygiene practices and advertisements are remnants of

the historical stigma that women's bodies are unclean.  Some communities around the world still

believe that menstruation can spread "impurity," and thus menstruating women are prohibited

from attending religious ceremonies, visiting religious spaces, handling food, sleeping in their

home, washing their own bodies, and eating certain foods.[34]  Within the United States, experts

note that attitudes towards women's bodies and cleanliness have a more complex history tied to

---

[29] Dani Blum, *When Vagisil Targeted Teens, the Backlash Was Swift*, THE NEW YORK TIMES (Feb. 18, 2021), https://www.nytimes.com/2021/02/18/well/vagisil-omv-teens.html.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Menstruation and Human Rights – Fequently Asked Questions: Menstruation?  How do they affect the status of women?*, UNITED NATIONS POPULATION FUND (May 2022), https://www.unfpa.org/menstruationfaq.

racism.[35]  To justify the slave trade, for example, Europeans theorized there is a hierarchy of race based on "phenotypic difference," which included smell.[36]  Historians believe this olfactory discrimination has since shaped ideas of cleanliness in Black communities and sparked hygiene routines in hope of racial assimilation.[37]

32.     Research shows that feminine hygiene products are disproportionately used by Black and Latina women in the United States.[38]  Ami Zota, an associate professor in the Department of Environmental and Occupational Health at George Washington University, explains, in particular, many of these products have become "part of the African American beauty culture" over the years.[39]  This means that women in racial minorities are more likely to use feminine hygiene products, so there is a disproportionate exposure to chemicals that the medical community warns against.[40]

33.     To summarize, the feminine hygiene product market preys on the notion that women need a product to make their vaginas and vulvas "clean" or smell a certain way.  But, as medical experts have stated, not only are such products unnecessary due to the vagina and vulva's self-cleaning anatomy, the products release chemicals that are harmful to the vagina and vulva.

---

[35] Allyson Chiu and Amber Ferguson, *The Troubled Legacy of Feminine Care Products*, THE WASHINGTON POST (May 31, 2022), https://www.washingtonpost.com/wellness/2022/05/31/feminine-wash-honey-pot-history/.

[36] *Id.*

[37] *Id.*

[38] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

[39] *Id.*

[40] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

C.      **Vagisil**

34.      Defendant manufactures, markets, advertises, labels, and sells the Vagisil Feminine Wash Products (collectively, the "Vagisil Products" or "Products").  The Products include Odor Block Daily Intimate Wash, pH Balance Wash, Unscented Daily Intimate Wash, Healthy Detox Daily Therapeutic Wash, OMV! All-Day Fresh Wash, and Scentsitive Scents Wash in all scents.

35.      As described herein, Plaintiff Wise purchased the Vagisil Scentsitive Scents Spring Lilac Wash, Vagisil pH Balance, and Vagisil Healthy Detox Wash and Plaintiff Choudhry purchased the Vagisil Scentsitive Scents Wash in Peach Blossom, Rose All Day, Spring Lilac, White Jasmine, and Coconut Hibiscus (the "Purchased Products").  The additional products identified above in paragraph 34 (collective, the "Products") are substantially similar to the Purchased Products:

   (a)    **Defendant**.  All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

   (b)    **Brand**.  All Products are sold under the Vagisil trademarked brand name.

   (c)    **Marketing Demographics**.  All Products are marketed directly to women for personal use.

   (d)    **Purpose**.  All Products are intimate washes intended for daily use.

   (e)    **Application**.  All Products are applied in the same manner: lathered with hands or washcloth, applied to vulva, and rinsed.

   (f)    **Misrepresentations**.  All Products contain the same claims that they are "daily intimate" washes suitable for use on the vulva on a daily basis.

(g)   **Misleading Effect**.  The misleading effect of the Products' labels on

consumers is the same for all Products—consumers pay for intimate

washes that are not suitable for use on the vulva.

36.    Defendant represents that the Products are "daily intimate washes" that are

suitable for use in "intimate areas."  Defendant includes these representations on the labeling of

the Products:
















37.     Defendant similarly includes these representations on its website:



38.     The Products contain the following ingredients that are listed as problematic on the Chem Fatale report[41]:

| Product | Ingredient |
| --- | --- |
| Vagisil Odor Block Wash | Fragrance / Parfum |
| Vagisil pH Balance Wash | Fragrance / Parfum |
| Vagisil Sensitive Scent: Peach Blossom | Fragrance / Parfum |
| Vagisil Sensitive Scent: Rosé All Day | Fragrance / Parfum |
| Vagisil Sensitive Scent: Spring Lilac | Fragrance / Parfum |
| Vagisil Sensitive Scent: White Jasmine | Fragrance / Parfum |

---

[41] *Chem Fatale*, WOMEN'S VOICES FOR THE EARTH (Nov. 2013), https://womensvoices.org/wp-content/uploads/2013/11/Chem-Fatale-Report.pdf.

| Product | Ingredient |
|---|---|
| Vagisil Scensitive Scent: Cucumber Magnolia | Fragrance / Parfum |
| OMV! All-Day Fresh Intimate Feminine Wash: Berry Bliss | Fragrance |
| OMV! All-Day Fresh Intimate Feminine Wash: Vanilla Clementine | Fragrance |
| OMV! All-Day Fresh Intimate Feminine Wash: Juicy Watermelon | Fragrance |

39.     Defendant represents the Products as suitable for vulvar use on a daily basis and encourages women to use intimate washes by likening women's sexual anatomy to teeth and hair:

> We all use many products specially formulated for a specific area of the body—toothpaste to clean teeth, shampoo to clean hair.  Vagisil washes are no exception.  [The Products] are designed especially for vulvar use—pH balanced to vulvar skin, ***safe and effective for sensitive intimate skin***, and tested by gynecologists and dermatologists."[42]

40.     Defendant further explains that women need "special products for [the] vulva" because "[p]roducts formulated for [a woman's] entire body can throw off the external vaginal pH balance and may cause discomfort or even irritation."[43]  Defendant continues its representation that the Products are suitable for daily use on the vulva: "All Vagisil products are designed especially for vulvar use—pH balanced, ***safe and effective for sensitive intimate skin***, and tested by gynecologists and dermatologists."[44]

41.     However, the medical community is adamant that a woman's sexual anatomy is a unique and delicate system.  The vulva and vagina are ***not*** like teeth or hair, and women should ***not*** use intimate wash products on their vulvas.[45]  On the contrary, gynecologists advise that

---

[42] *FAQs*, Vagisil, https://www.vagisil.com/faq (last visited Nov. 17, 2022) (emphasis added).

[43] *Id.*

[44] *Id.* (emphasis added).

[45] "First of all, vaginal cleansing products are not like hair products (although just as expensive)."  Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, Mayo Clinic Health System (Nov. 2, 2016),

chemicals in soap (such as those in Defendant's Products) pose serious hazards to women's health.  Indeed, the Products contain ingredients that the Chem Fatale report noted were problematic or harmful.  Thus, gynecologists advise that women should only use plain water to clean the vulva and vagina, and that nothing more than water is necessary because female anatomy is self-cleaning.  Therefore, medical experts advise that the Products are not suitable for daily use on the vulva.

42.     Despite Defendant's claim that the Products are "pH balanced," gynecologists urge women not to use any intimate washes because they can "alter[] the normal eco-system [(i.e., pH balance)] and can allow growth of [bad] bacteria and yeast."[46]

43.     Healthy vaginal pH levels serve to protect a woman's sexual anatomy.  pH is a measurement of how acidic or basic a substance is.  pH is measured on a scale from 0 to 14—a pH less than 7 is acidic while a pH over 7 is basic.  Generally, a healthy vagina has a pH level between 3.8 and 4.5, meaning it is moderately acidic.  If the vaginal pH levels are thrown off, a woman becomes more susceptible to bacterial vaginosis, yeast infections, human papillomavirus, herpes simplex virus, HIV, and trichomoniasis.[47]

44.     Defendant makes an "ingredients promise" to consumers on its website—that the ingredients "are proven gentle for use on vulvar skin" and the Products only contain "[s]kin-friendly scents," which is why, as Defendant purports, the Products are suitable for daily use on

---

https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene

[46] *Id.*; *see also Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited Nov. 17, 2022).

[47] Stephanie Watson, *Everything You Need to Know About Maintaining Your Vaginal pH Balance*, HEALTHLINE (July 11, 2019), https://www.healthline.com/health/womens-health/vaginal-ph-balance#normal-ph.

the vulva.[48]  On whether women should use products that contain fragrance, Defendant says:

"Many gynecologists still do not recommend fragrance-containing products.  They may be

unaware of our new skin-friendly scents that are formulated with allergen-free scent ingredients

and are gentle enough for intimate skin and all over.  But we also offer fragrance-free

products."[49]

45.     Defendant is correct: gynecologists warn women not to use products that contain

*any* fragrance on the vulva.  As Dr. Staci Tanouye explains, "[a]ny product that is scented can

potentially damage the skin."[50]  "Fragrance is the [number] 1 cause of allergic contact dermatitis,

[] a condition in which the skin gets inflamed and becomes itchy, red, and rashy after contact

with an irritating substance."[51]  Fragrances contain undisclosed chemicals that can cause rashes,

endocrine disruption, or even cancer.[52]

46.     Further, even if the products are fragrance free, gynecologists still caution women

against using these intimate washes because, again, any form of soap can alter vaginal pH levels

and make women more susceptible to infections and diseases, which makes the Products

unsuitable for daily use on the vulva.[53]

---

[48] *Our Story*, VAGISIL, https://www.vagisil.com/our-story (last visited Nov. 17, 2022).

[49] *FAQs*, VAGISIL, https://www.vagisil.com/faq (last visited Nov. 17, 2022).

[50] Dani Blum, *When Vagisil Targeted Teens, the Backlash Was Swift*, THE NEW YORK TIMES (Feb. 18, 2021), https://www.nytimes.com/2021/02/18/well/vagisil-omv-teens.html.

[51] *Id.* (citation omitted).

[52] *Chemicals of Concern in Menstrual & Intimate Care Products*, WOMEN'S VOICES FOR THE EARTH, https://womensvoices.org/menstrual-care-products/chemicals-of-concern-in-feminine-care-products/ (last visited Nov. 17, 2022).

[53] Mayo Clinic Staff, *You Don't Need Fancy Products For Good Feminine Hygiene*, MAYO CLINIC HEALTH SYSTEM (Nov. 2, 2016), https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/you-dont-need-fancy-products-for-good-feminine-hygiene; *see also Vaginitis: Frequently Asked Questions*, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/womens-health/faqs/vaginitis (last visited Nov. 17, 2022).

47.     Defendant touts its "products [as] safe, gentle and effective" for use on the vulva.[54] However, contrary to Defendant's express representations, the Products are not safe for vulvar use and are therefore unsuitable as "daily intimate washes." At a minimum, the medical community advises not using anything other than water on vulvas because women's sexual anatomy is self-cleaning. More troubling, though, is the fact that the Products are known to cause vulvar skin irritations or an imbalanced pH, which in turn causes bacterial vaginosis, yeast infections, human papillomavirus, herpes simplex virus, HIV, and trichomoniasis.

48.     To summarize, Defendant markets its Products as "safe and effective for sensitive intimate skin," suitable for "vulvar use," and "pH balanced." These representations are false and misleading. Gynecologists have stated that feminine hygiene products like Defendant's are not only unsafe for vulvar use because the ingredients in the Products can cause infections and make women more susceptible to disease, the Products are unnecessary because the vagina and vulva are self-cleaning and only plain warm water is needed to assist that process. At best, therefore, Plaintiffs and other Class Members would not have paid as much for the Products but for Defendant's misrepresentations regarding the Products' suitability as daily intimate washes for vulvar use, and but for Defendant's omissions that the Products are not suitable as daily intimate washes for vulvar use. At worst, Plaintiffs and other Class Members would not have purchased the Products at all but for Defendant's misrepresentations and omissions because the Products are not only dangerous, they are unnecessary and therefore worthless. In either case, Plaintiffs and other Class Members did not receive the benefit of their bargain with Defendant.

---

[54] *Our Story*, VAGISIL, https://www.vagisil.com/our-story (last visited Nov. 17, 2022).

## CLASS ALLEGATIONS

49.    Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Products during the applicable statute of limitations period (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

50.    Plaintiff Wise also seeks to represent a subclass consisting of Class members who purchased the Products in California during the applicable statute of limitations period (the "California Subclass").

51.    Plaintiff Choudry also seeks to represent a subclass consisting of Class members who purchased the Products in New York during the applicable statute of limitations period (the "New York Subclass").

52.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

53.    **Numerosity.**  The members of the Class and Subclasses are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimates that there are thousands of members in the Class and Subclasses.  Although the precise number of members in the Class and Subclasses is unknown to Plaintiffs, the true number of members of the Class and Subclasses is known by Defendant and may be determined through discovery.  Members of the Class and Subclasses may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

54.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

(a)     whether Defendant's labeling, marketing, and promotion of the Products was false and misleading;

(b)     whether Defendant's conduct was unfair and/or deceptive; and

(c)     whether Plaintiffs and the Class and Subclasses have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

55.     With respect to the Subclasses, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq*, and whether Defendant violated GBL §§ 349 and 350.

56.     **Typicality.**  The claims of the named Plaintiffs are typical of the claims of other members of the Class and Subclasses in that the named Plaintiffs were exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

57.     **Adequacy of Representation.**  Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the members of the Class and Subclasses they seek to represent, they have retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

24

58.   **Superiority.**  A class action is superior to all other available means for the fair

and efficient adjudication of this controversy.  The damages or other financial detriment suffered

by individual members of the Class and Subclasses are relatively small compared to the burden

and expense of individual litigation of their claims against Defendant.  It would, thus, be

virtually impossible for the Class or Subclasses on an individual basis, to obtain effective redress

for the wrongs committed against them.  Furthermore, even if members of the Class and

Subclasses could afford such individualized litigation, the court system could not. Individualized

litigation would create the danger of inconsistent or contradictory judgments arising from the

same set of facts.  Individualized litigation would also increase the delay and expense to all

parties and the court system from the issues raised by this action.  By contrast, the class action

device provides the benefits of adjudication of these issues in a single proceeding, economies of

scale, and comprehensive supervision by a single court, and presents no unusual management

difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation of California Consumers Legal Remedies Act**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf Of The California Subclass)**

59.   Plaintiff Wise hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

60.   Plaintiff Wise brings this claim individually and on behalf of the California

Subclass against Defendant.

61.   The CLRA provides that "unfair methods of competition and unfair or deceptive

acts or practices undertaken by any person in a transaction intended to result or which results in

the sale or lease of goods or services to any consumer are unlawful."

62.   The Products are a "good," as defined by the CLRA in California Civil Code

§ 1761(a).

63.    Defendant is a "person," as defined by the CLRA in California Civil Code
§ 1761(c).

64.    Plaintiff Wise and members of the California Subclass are "consumers," as
defined by the CLRA in California Civil Code § 1761(d).

65.    The purchase of the Products by Plaintiff Wise and members of the California
Subclass are "transactions" as defined by the CLRA in California Civil Code § 1761(e).

66.    Defendant violated the following sections of the CLRA by selling the Products to
Plaintiff Wise and the California Subclass through the false, misleading, deceptive, and
fraudulent claim that the Products are suitable for vulvar use:

> (a)   Section 1770(a)(5) by representing that the Products have
> "characteristics, … uses [or] benefits … which [they] do not have."
>
> (b)   Section 1770(a)(7) by representing that the Products "are of a
> particular standard, quality, or grade … [when] they are of another."
>
> (c)   Section 1770(a)(9) by advertising the Products "with [the] intent not
> to sell them as advertised."

67.    Defendant's uniform and material representations and omissions regarding the
Products were likely to deceive, and Defendant knew or should have known that its
representations and omissions were untrue and misleading.

68.    Defendant's conduct is malicious, fraudulent, and wanton in that Defendant
intentionally misled and withheld material information from consumers, including Plaintiff Wise,
to increase the sale of the Products.

69.    Plaintiff Wise and members of the California Subclass could not have reasonably
avoided such injury.  Plaintiff Wise and members of the California Subclass were unaware of the

existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff Wise and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

70.     Plaintiff Wise and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the suitability of the Products for vulvar use—and Defendant's failure to disclose otherwise—in deciding to purchase the Products. The claim that the Products are suitable for vulvar use—and Defendant's failure to disclose otherwise—was a substantial factor in Plaintiff and the California Subclass's purchasing decision.  The claim that the Products are suitable for vulvar use—and Defendant's failure to disclose otherwise—was material because a reasonable consumer would consider it important in deciding whether to purchase the Products.  Indeed, if a product were disclosed to be unsafe or unnecessary, a reasonable consumer would likely decline to purchase the Product.

71.     As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff Wise and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products.  Further, Plaintiff Wise and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.  Accordingly, Plaintiff Wise seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

72.     Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff Wise and consumers to pay for Products that they were not, in fact, receiving.

Defendant willfully and knowingly disregarded the rights of Plaintiff Wise and California Subclass members because Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff Wise.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff Wise and California Subclass members to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff Wise and California Subclass members.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

73.    Pursuant to California Civil Code section 1782, more than thirty days prior to the filing of this complaint, on October 21, 2022, Plaintiff Wise's counsel, acting on behalf of Plaintiff Wise and members of the California Subclass, mailed a notice via U.S. certified mail, return receipt requested, to Defendant at its principal places of business and care of its agent for service of process registered with the New York Secretary of State (Combe Incorporated, Attn: Legal Department, 1101 Westchester Ave., White Plains, NY 10604; Combe Incorporated, c/o C T Corporation System, 28 Liberty St., New York, NY 10005) regarding Defendant's particular violations of the California Consumers Legal Remedies Act, as set forth above, and demanding that Defendant correct and otherwise rectify those violations with respect to Plaintiff Wise and all members of the California Subclass.  The form, content, and delivery of the notice satisfy subsections (1) and (2) of section 1782(a).  The notice of violations and demand for remedial action, as of the filing of this complaint, did not result in adequate correction, repair,

replacement, and/or other remedy by Defendant, including all remedial action set forth in the notice letter and as set forth under section 1782(c).  A true and correct copy of the letter sent to Defendant is attached hereto as **Exhibit 1**.

**COUNT II**
**Violation Of New York GBL § 349**
**(On Behalf Of The Class And The Subclasses)**

74.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

75.     Plaintiffs bring this claim individually and on behalf of the proposed Class and Subclasses against Defendant.

76.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

77.     In its provision of services throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

78.     Decisions regarding Defendant's manufacturing, labeling, and marketing occurred at its New York headquarters, and the relevant conduct giving rise to this lawsuit stems from Defendant's conduct in New York.  Accordingly, out-of-state plaintiffs have standing to sue Defendant under GBL § 349.

79.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, (i) misrepresenting that the Products are "pH balanced to vulvar skin," "safe and effective for sensitive intimate skin," and are generally suitable for vulvar use, and (ii) failing to disclose that the Products are not in fact safe or suitable for vulvar use.

80.     The foregoing deceptive acts and practices were directed at consumers.

81.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the suitability of the Products for vulvar use, as well as the fact that Products bestow no benefit at all, in order to induce consumers to purchase the Products.

82.     Plaintiffs and members of the Class and Subclasses were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Products, or would have paid substantially less for them, had Defendant not misrepresented the Products were suitable for vulvar use, and had Defendant not failed to disclose that the Products were not suitable for vulvar use.

83.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

84.     On behalf of themselves and other members of the Class and Subclasses, Plaintiffs seek to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT III**
**Violation Of New York GBL § 350**
**(On Behalf Of The Class And The Subclasses)**

85.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

86.     Plaintiffs bring this claim individually and on behalf of the proposed Class and Subclasses against Defendant.

87.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

88.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

89.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

90.     Defendant's false, misleading, and deceptive statements, representations of fact, and omissions were and are directed to consumers.

91.     Defendant's false, misleading, and deceptive statements, representations of fact, and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

92.     Defendant's false, misleading, and deceptive statements representations of fact, and omissions have resulted in consumer injury or harm to the public interest.

93.     Defendant possessed superior knowledge that the Products were not suitable for vulvar use.  As a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Products, and had in fact advised that Defendant's Products were unsafe.  Indeed, Defendant notes in the FAQ section of its website that "[m]any gynecologists still do not recommend fragrance-containing products."[55]

94.     As a result of Defendant's misrepresentations and omissions, Plaintiffs and members of the Class and Subclasses have suffered economic injury because they would not have purchased the Products, or would have paid substantially less for it, had Defendant not misrepresented the Products were suitable for vulvar use, and had Defendant not failed to disclose that the Products were not suitable for vulvar use.

---

[55] *FAQs*, VAGISIL, https://www.vagisil.com/faq (last visited Nov. 17, 2022).

95.     On behalf of themselves and other members of the Class and Subclasses, Plaintiffs seek to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf Of The Class And The Subclasses)**

96.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

97.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

98.     This claim is brought under the laws of New York and California.

99.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were suitable for daily use on the vulva.

100.    In fact, the Products are not suitable for daily use on the vulva.  Doctors advise women to only use water to clean the vulva because all forms of soap can cause irritation to the sensitive vulvar skin and all forms of soap can alter the natural pH levels of the vagina. Moreover, any soaps that contain fragrance, such as the Products at issue, are even more likely to irritate the vulva.

101.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class and Subclass members have been injured and harmed because they would not have purchased the Products, or would have paid substantially less for them, if they had known that the Products were unsuitable for vulvar use.

102.    On October 21, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313, 2-314, and 2-607.  Plaintiffs' counsel sent Defendant a letter advising that

Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT V**
**Breach of Implied Warranty**
**(On Behalf Of The Class And The California Subclasses)**

103.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

104.    Plaintiff Wise brings this claim individually and on behalf of the members of the proposed Class—other than the New York Subclass—and California Subclass against Defendant.

105.    This claim is brought under the laws of the State of California.

106.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that the Products were suitable for vulvar use.

107.    Defendant breached the warranty implied in the contract for the sale of the defective Products because they could not pass without objection in the trade under the contract description and the Products do not conform to the representation because the Products manufactured by Defendant are not suitable for vulvar use.  As a result, Plaintiff Wise and members of the Class and California Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

108.    Plaintiff Wise and Class and California Subclass members purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

109.    The Products were not altered by Plaintiff Wise or Class and California Subclass members.

110.    The Products sere defective when they left the exclusive control of Defendant.

111.    Defendant knew that the Products would be purchased and used without additional testing by Plaintiff Wise and Class and California Subclass members.

112.    The Products were unfit for its intended purpose, and Plaintiff Wise and Class and California Subclass members did not receive the goods as warranted.

113.    As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff Wise and Class and California Subclass members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew that the Products were not suitable for vulvar use; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

114.    Plaintiff Wise is not required to allege privity because the Products are ostensibly drugs and therefore qualify for an exception to the privity rule under California law. *Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120, at *10 (C.D. Cal. Aug. 28, 2019) ("The Court agrees with Plaintiff that tampons are subject to the privity exception governing food and drugs.").

115.    On October 21, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff Wise that complied in all respects with U.C.C. §§ 2-313, 2-314, and 2-607.  Plaintiff Wise's counsel sent Defendant a letter advising that Defendant breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff Wise's counsel's letter is attached hereto as **Exhibit 1**.

## COUNT VI
### Unjust Enrichment
### (On Behalf Of The Class And The California Subclasses)

116.    Plaintiffs incorporate by reference the allegations contained in all proceeding paragraphs of this complaint.

117.    Plaintiff Wise brings this claim individually and on behalf of members of the Class—other than the New York Subclass—and California Subclass against Defendant.

118.    This claim is brought under the laws of the State of California.

119.    Plaintiff Wise and Class and California Subclass members conferred benefits on Defendant by purchasing the Products.

120.    Defendant has knowledge of such benefits.

121.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff Wise's and Class and California Subclass members' purchases of the Products. Retention of monies under these circumstances is unjust and inequitable because Defendant misrepresented that the Products were suitable for vulvar use and failed to disclose the Products were not suitable for vulvar use, and charged a price premium based on those representations and omissions.

122.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff Wise and Class and California Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff Wise and the Class and California Subclass members for their unjust enrichment, as ordered by the Court.

## COUNT VII
### Fraud
### (On Behalf Of The Class And The Subclasses)

123.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

124.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

125.     This claim is brought under the laws of the States of New York and California.

126.     As discussed above, Defendant provided Plaintiffs and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were suitable for vulvar use, and failing to disclose the Products were not suitable for vulvar use.

127.     These misrepresentations and omissions were made with knowledge of their falsehood.  As a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Products, and had in fact advised that Defendant's Products were unsafe.  Indeed, Defendant notes in the FAQ section of its website that "[m]any gynecologists still do not recommend fragrance-containing products."[56]

128.     The misrepresentations and omissions made by Defendant, upon which Plaintiffs and members of the Class and Subclasses reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and members of the Class and Subclasses to purchase the Products.

129.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Class and Subclasses, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

---

[56] *FAQs*, VAGISIL, https://www.vagisil.com/faq (last visited Nov. 17, 2022).

(a)     For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representative of the Class and Subclasses, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs, the Class, and the Subclasses on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest in all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorney's fees and expenses and costs of suit.

## <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: December 21, 2022                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
         Max S. Roberts

Max S. Roberts
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott *
Emily A. Horne*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

Email: bscott@bursor.com
      ehorne@bursor.com

*\* Pro hac vice application forthcoming*

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Max S. Roberts, declare as follows:

1.      I am an attorney at law licensed to practice in the State of New York, and I am a member of the bar of this Court.  I am an Associate at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action.  Plaintiff Wise alleges that she is a citizen of California and resides in Antioch, California.  Plaintiff Choudhry alleges that she is a citizen of New York and resides in New York City, New York.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant resides in this County.

I declare under the penalty of perjury under the laws of the State of New York and the United States that the foregoing is true and correct and that this declaration was executed at New York, New York, on December 21, 2022.

                                                                        */s/ Max S. Roberts*
                                                                        Max S. Roberts