UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSALIND WISE and MOONA CHOUDHRY, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>           -against-<br><br>COMBE INCORPORATED,<br><br>                    Defendant. | **OPINION AND ORDER**<br><br>22-CV-10787 (PMH) |

      Rosalind Wise ("Wise") and Moona Choudhry ("Choudhry" and together, "Plaintiffs") bring this putative class action against Combe Incorporated ("Defendant") alleging that the labeling on Defendant's "daily intimate washes" products under the Vagisil and OMV! brands is deceptive and misleading. (Doc. 18, "FAC"). Plaintiffs assert the following claims for relief: (i) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (ii) violations of New York General Business Law ("GBL") § 349; (iii) violations of GBL § 350; (iv) breach of Express Warranty under New York and California law; (v) breach of Implied Warranty of Merchantability/Fitness for a Particular Purpose under California law; (vi) unjust enrichment under California law; and (vii) fraud under New York and California law.

      Before the Court is Defendant's motion to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant moved to dismiss on June 20, 2023, in accordance with the briefing schedule set by the Court. (Doc. 30). Defendant filed a memorandum of law and declaration in support of its motion (Doc. 31, "Curry Declaration"; Doc.

32;[1] Doc. 33, "Def. Br."), Plaintiffs filed a memorandum of law in opposition (Doc. 34, "Pl. Br."), and the motion was fully submitted upon the filing of Defendant's reply. (Doc. 35, "Reply"). Plaintiff filed a notice of supplemental authority on March 4, 2024. (Doc. 46).

For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant manufactures, markets, advertises, labels, and sells a variety of female hygiene products under the "Vagisil" and "OMV!" brands throughout the United States, including California and New York. (FAC ¶¶ 1-2, 98). Plaintiffs allege that the products at issue in this action "are all liquid soaps that are intended for use on the vulva, and . . . come in a variety of scents with a variety of special properties"—including, "Vagisil Odor Block Wash, Vagisil pH Balance Wash, Vagisil Scentsitive Scents Washes, Vagisil Unscented Wash, Leak Rescue Wash, Healthy Detox Wash,[2] and OMV! All-Day Fresh Wash" (the "Products") (*Id.* ¶¶ 4, 35). The Products' labels include the phrases "daily intimate wash," "gynecologist tested," and "for the most intimate skin on your body." (*Id.* ¶ 5). Plaintiffs allege that "reasonable consumers reviewing the Products' label would believe the Products are suitable for daily vulvar cleansing." (*Id.* ¶ 5). Defendant markets the Products as "safe and effective for sensitive intimate skin," suitable for "vulvar use," and "pH balanced." (*Id.* ¶¶ 53). Defendant states on its website that the Products' ingredients "are proven gentle for use on vulvar skin." (*Id.* ¶ 49).

---

[1] Defendant asks the Court to take judicial notice of the "complete product labeling and packaging" for the products referenced in the FAC (attached to the Curry Declaration as Exhibits A-N) pursuant to Fed. R. Evid. 201(b). (Doc. 32). Although Defendant's request for judicial notice is unopposed, the Court may and does properly consider those exhibits as "documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2] Plaintiffs withdrew their claims as to Defendant's Healthy Detox Wash (Pl. Br. at 12, n. 1); and thus mooted out the standing argument made.

Plaintiffs contend that these representations—namely, that the Products are "suitable as a daily intimate wash for the vulva"—are false and misleading to consumers because "the medical community is adamant that women should only use water to clean their vulvas and that intimate washes are harmful to women's health." (*Id.* ¶ 6). Specifically, Plaintiff alleges that "the Products are not safe for vulvar use, let alone on a daily basis, and consumers would not have purchased the Products, or paid substantially less for them, had they known the claim was not true." (*Id.*).

Wise purchased the Vagisil Scentsitive Scents Spring Lilac Wash, Vagisil pH Balance, and Vagisil Healthy Detox Wash in Pittsburg, California in or around September 2022. (*Id.* ¶¶ 8, 35). Wise alleges that she reviewed the labeling and packaging of these products, saw these products labeled and marketed as a "daily intimate wash[es]," and "understood these representations to mean that the Product was suitable for use as a daily intimate wash on the vulva and that the Product was not harmful to her sexual anatomy." (*Id.* ¶ 8). Wise did not see any "representations or warranties that the Product was unsafe for use on her vulva or unsuitable as a daily intimate wash." (*Id.* ¶ 9). Wise allegedly relied on "Defendant's representations . . . that the Product was suitable for daily use on her vulva" in deciding to purchase these products. (*Id.* ¶ 8). Wise claims that Defendant's representations, warranties, and omissions were "part of the basis of the bargain," and that she "would not have purchased the Product or would have paid substantially less for it had she known that the Product was unsafe for use on her vulva and therefore unsuitable as a daily intimate wash." (*Id.* ¶¶ 8-9).

Choudhry purchased the Vagisil Scentsitive Scents Wash product in Peach Blossom, Rose All Day, Spring Lilac, White Jasmine, and Coconut Hibiscus at CVS in New York City, New York as recently as August 2022. (*Id.* ¶¶ 10, 35). Choudhry asserts nearly identical allegations as Wise, including that she "relied on Defendant's representations . . . that the Products were suitable for

3

daily use on her vulva" and "did not receive the benefit of her bargain because the Product was not, in fact, suitable for the vulva and therefore unsuitable as a daily intimate wash." (*Id.* ¶¶ 10-11).

Plaintiffs do not allege that they ever purchased the following products: Unscented Daily Intimate Wash, Odor Block, Leak Rescue Wash, Scentsitive Scents Wash in Cucumber Magnolia, or any OMV! All-Day Fresh Wash (in Berry Bliss, Vanilla Clementine, or Juicy Watermelon) (the "Unpurchased Products"). (*Id.* ¶¶ 34-35). Plaintiffs claim, however, that the Unpurchased Products are substantially similar to the Products they purchased. (*Id.* ¶ 35).

Plaintiffs seek certification of a class, with a California Subclass and New York Subclass, under Federal Rule of Civil Procedure Rule 23 in connection with this action. (*Id.* ¶¶ 54-63).

## STANDARD OF REVIEW

I. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[3] "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id*. (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019). "Where, as here, the defendant moves for dismissal under

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

4

Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.     Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

5

statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I. Federal Rule of Civil Procedure 12(b)(1): Standing

The Court must first address whether Plaintiffs have standing to bring their claims asserted in the First Amended Complaint before determining whether they are stated plausibly. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016). The Supreme Court has held that parties pressing claims in federal courts must have standing to bring their claims to ensure that there is an actual case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Id.* 560-61 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). For the purposes of standing, an injury must be an injury in fact, meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (citations omitted). A plaintiff's pleading must only allege, to survive a motion to dismiss, facts that "affirmatively and plausibly suggest" her standing to sue. *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 255 (S.D.N.Y. 2018) (citing *Boelter v. Hearst Commc'n, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016)).

Plaintiffs contend that they have Article III standing based on a price premium theory of injury. (Pl. Br. at 10). Plaintiffs allege that they "paid a substantial price premium due to the false and misleading claim that the product is suitable as a daily intimate wash for the vulva," and that they "would not have purchased the Product or would have paid substantially less for it had [they] known that the Product was unsafe for use on [the] vulva and therefore unsuitable as a daily

6

intimate wash." (FAC ¶¶ 8-11). These allegations sufficiently allege a price premium theory at this stage. *See i.e. Hardy v. Ole Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *1 (2d Cir. May 22, 2023) ("Hardy suffered a cognizable injury when he paid a price premium for a La Banderita product that he otherwise would not have purchased had he known it was not made in Mexico."); *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021).

Defendants separately challenge standing as to the Unpurchased Products. (Reply at 9). "Courts are split as to whether a plaintiff has Article III standing to bring a putative class action over products the plaintiff did not purchase herself or himself, with some courts finding the inquiry is best addressed at the certification stage." *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 188 (S.D.N.Y. 2016) (citing *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *10 (S.D.N.Y. Aug. 12, 2016)). "The better view appears to be, as 'courts in this Circuit have held,' that, 'subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are sufficiently similar to the products that the named plaintiff did purchase.'" *Id.* (quoting *Mosely v. Vitalize Labs, LLC*, No. 13-CV-02470, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015)).

Here, Plaintiffs allege that the Unpurchased Products are "substantially similar" to the Products purchased by Plaintiffs because, *inter alia*, they are all manufactured and sold by Defendant under the Vagisil brand, marketed directly to women for personal use, have the same intended purpose as intimate washes for daily use, are applied in the same manner, contain the same alleged misrepresentations that they are "daily intimate" washes suitable for use on the vulva on a daily basis, and have the same allegedly misleading effect on consumers. (FAC ¶¶ 35-36). In

light of Plaintiffs' allegations regarding the similarities in intended use, packaging, and labeling of the Unpurchased Products, the Court concludes at this stage that these Unpurchased Products are "sufficiently similar" to the Products purchased by Plaintiffs.[4] *Bautista*, 223 F. Supp. 3d at 188. Accordingly, Plaintiffs sufficiently plead their standing as to the Unpurchased Products.

II. Federal Rule of Civil Procedure 12(b)(6): Failure to State a Claim

A. First Claim for Relief: California's False Advertising Law § 17500, *et seq*.

The First Claim for Relief asserted by Wise on behalf of herself and the California Subclass alleges violation of the CLRA. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices[.]" Cal. Civ.Code § 1770(a). "[C]laims under the . . . CLRA . . . are governed by the 'reasonable consumer' standard." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Plaintiff, to meet that standard, must "show that members of the public are likely to be deceived." *Id*. "The California Supreme Court has recognized that these statutes prohibit explicitly false advertising and advertising that is either actually misleading, or which has a capacity, likelihood, or tendency to deceive or confuse the public." *Id*.

"The reasonable consumer standard requires more than a mere possibility that the label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id*. "[T]he reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances,

---

[4] While most of the Unpurchased Products are labeled with the challenged representation "daily intimate wash," Defendant correctly points out that neither the OMV! All Day Fresh Wash Product (Curry Decl., Ex. N) nor the Leak Rescue product (*id*., Ex. J) are labeled as such. (Def. Br. at 33). However, the OMV! All Day Fresh Wash Product label includes the representation "safe & gentle for intimate area" and the Leak Rescue product is labeled as a "daily wash." (*Id*.). At this stage, the Court declines to exclude these two Unpurchased Products on the basis of standing given the other similarities to the Products purchased by Plaintiff and the possibility that these products may create the same alleged misrepresentation. Of course, Defendant is not foreclosed from raising these arguments at a later juncture in this case.

could be misled." *Id.* "The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *Id.*

Furthermore, claims under the CLRA are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b) where they are grounded in fraud. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). To satisfy this requirement, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Id.*; *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1003 (N.D. Cal. 2021). Wise's CLRA claims are based on Defendant's "fraudulent claim that the Products are suitable for vulvar use." (FAC ¶ 71). Because these claims are premised on allegations of fraud, they are subject to the heightened pleading standard under Rule 9(b).

Wise alleges Defendant violated (1) "Section 1770(a)(5) by representing that the Products have 'characteristics, . . . uses [or] benefits . . . which [they] do not have'"; (2) "Section 1770(a)(7) by representing that the Products 'are of a particular standard, quality, or grade … [when] they are of another'"; and (3) "Section 1770(a)(9) by advertising the Products 'with [the] intent not to sell them as advertised.'"

"[I]n determining whether a reasonable consumer would have been misled by a [product label], context is crucial." *Fink*, 714 F.3d at 742. "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* Courts must therefore "consider the challenged [label] as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Hoffmann v. Kashi Sales, L.L.C.*, No. 21-CV-09642, 2022 WL 17823171, at *3 (S.D.N.Y. Dec. 20, 2022) ("courts

assess each allegedly misleading statement in light of its context on the product label or advertisement as a whole, contemplating the entire mosaic rather than each tile separately").

Plaintiffs allege that the Products' labels—which includes the phrases "daily intimate wash," "gynecologist tested," and "for the most intimate skin on your body"—leads reasonable consumers to believe that the Products are suitable for daily vulvar cleansing. (FAC ¶ 5). Plaintiffs further allege that these representations on the Product labels, "[t]aken in context . . . [of] the brand's name," lead reasonable consumers to understand that the Products are intended for use on women's vulvas.[5] (*Id*. ¶ 41). Plaintiffs assert that this representation is false and misleading because the Products are not safe for vulvar use on a daily basis. (*Id*. ¶ 6). Defendant argues, however, that the Product labels accurately state that they are designated for intimate skin, can be used all over the body, and are for external use only, and that no reasonable consumer would understand Defendant's representations to mean that the Product is intended for use "*inside* the vagina." (Def. Br. at 10) (emphasis in original). The Court, drawing all inferences in favor of Plaintiffs as it must at the motion to dismiss stage, finds that Plaintiffs have satisfied the reasonable consumer inquiry. A consumer of feminine hygiene products which are marketed for daily washing of their "intimate" areas, especially in the context of a Product branded "Vagisil," may reasonably understand the Products to be suitable for daily use on the vulva. Further, Plaintiffs allege that the Products are not suitable for daily use on the vulva. (FAC ¶ 46). The Court therefore declines to conclude on this motion that the challenged representations are not false, misleading, or deceptive.

---

[5] Plaintiffs allege that Defendant's website includes the following statements in the FAQ section: (i) "All Vagisil products are designed **especially for vulvar use**—pH balanced, **safe and effective for sensitive intimate skin**, and tested by gynecologists and dermatologists" and (ii) "the ingredients 'are proven gentle for use on vulvar skin'" (FAC ¶¶ 40, 45, 49) (emphasis in original). Defendant argues, and Plaintiffs concede, that Plaintiffs did not rely on those website statements when purchasing the Products. (Def. Br. at 25; Pl. Br. at 34). Therefore, the Court considers these alleged statements only as context for the reasonable consumer inquiry and not as actionable representations.

*See i.e. Dorris v. Danone Waters of Am.*, 22-CV-08717, 2024 WL 112843, at *8 (S.D.N.Y. Jan. 10, 2024) ("The Court thus declines to determine as a matter of law that 'carbon neutral' is not false, misleading, or deceptive. Plaintiffs have otherwise sufficiently pled a CLRA claim, and therefore the Court denies Defendant's motion to dismiss this claim.").

Accordingly, Defendant's motion to dismiss the First Claim for Relief under the CLRA is denied.

III. <u>Second and Third Claims for Relief: New York General Business Law §§ 349 and 350</u>

Plaintiffs' Second and Third Claims for Relief allege violations of both GBL §§ 349 and 350. "Section 349 'prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Section 350 "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Orlander*, 802 F.3d at 300 (cleaned up). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)); *see also Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403, at *1 (2d Cir. Dec. 22, 2022) ("Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce, and is analyzed under the same reasonable consumer standard as Section 349").

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander*, 802 F.3d at 300 (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). Plaintiffs'

11

GBL claims are analyzed under the same reasonable consumer standard as the CLRA claims. *See Ackerman v. Coca-Cola Co.*, No. 09-CV-00395, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (applying reasonable consumer standard to claims under the GBL, UCL, FAL, and CLRA). Defendant raises, *inter alia*, four arguments relevant to Plaintiff's GBL claims: (i) Plaintiffs fail to plausibly allege Defendant committed any materially misleading acts; (ii) Plaintiffs fail to plead causation or reliance; (iii) Plaintiffs do not plausibly allege an injury; and (iv) Wise lacks standing to assert GBL claims.[6] (Def. Br. at 24-33).

With respect to Defendant's argument that Plaintiffs have not alleged misleading acts, as discussed *supra*, the Court has already determined that the challenged representations may mislead a reasonable consumer to believe that the Products are suitable for daily vulvar use.

Defendant also argues that Plaintiffs fail to allege causation. (Def. Br. at 33). "[T]o allege causation under the [GBL], a plaintiff must state in her complaint that she saw the relevant misleading statements before she purchased the products." *McAuley*, 2024 WL 898715 at *3. Here, Plaintiffs allege that they saw the challenged representations on the physical Products "prior to and at the time of purchase." (FAC ¶¶ 8, 10). These allegations are sufficient to plead causation. Likewise, Plaintiffs sufficiently allege reliance based on their allegations that they "relied on these representations and warranties in deciding to purchase the Product." (*Id.*).

Lastly, Defendant argues that Plaintiffs do not plausibly allege injury. (Def. Br. at 27). However, as discussed *supra*, the Court has already found that Plaintiffs plausibly alleged based a price premium theory of injury which is sufficient to plead an injury pursuant to either §§ 349 or 350. *See Orlander*, 802 F.3d at 302.

---

[6] Wise withdrew her GBL claims in her opposition brief. (Pl. Br. at 18, n. 4).

Accordingly, in light of Wise voluntarily discontinuing her GBL claims, Defendant's motion to dismiss the Second and Third Claims for Relief for violations of GBL §§ 349 and 350 is denied as to Choudhry only.[7]

IV.     Fourth Claim for Relief: Breach of Express Warranty

Plaintiffs assert claims for breach of express warranty under New York and California law. (FAC ¶¶ 101-107).

As a threshold matter, Defendant argues that the warranty claims fail under both New York and California law because Plaintiffs lack privity with Defendant. (Def. Br. at 32). First, under New York law, privity is required for Choudhry's breach of express warranty claim unless an exception applies. *See MacNaughton v. Young Living Essential Oils*, LC, 67 F.4th 89, 101 (2d Cir. 2023) ("[U]nder New York law, express and implied breach of warranty claims seeking to recover for financial injuries . . . require a showing of privity between the manufacturer and the plaintiff unless an exception applies."). Choudhry confirms that she only alleges economic damages (not personal injury) and that she purchased the Products from a CVS location in New York. Choudhry, therefore, is not in privity with Defendant. *See Indiviglio v. B&G Foods, Inc.*, No. 22-CV-09545, 2023 WL 9022866, at *6 (S.D.N.Y. Dec. 29, 2023). But Plaintiffs argue that an exception to the privity requirement applies for misrepresentations contained in "public advertising or sales literature." (Pl. Br. at 23-24) (citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015)). Courts in the Second Circuit have applied this exception to express warranty

---

[7] Defendant's notice of supplemental authority (Doc. 46) brought the recent decision in *McAuley v. Honey Pot Co., LLC*, to the Court's attention. 23-CV-01986, 2024 WL 898715, at *3 (S.D.N.Y. Mar. 1, 2024). That action involved similar allegations with respect to a feminine care product which the plaintiffs alleged were unsafe for vulvar use. *Id*. at *1. There, the Court granted defendant's motion to dismiss with leave to amend on the basis that Plaintiff's reliance on certain articles and a quotation form a gynecologist was insufficient to "raise plausible inferences" that the challenged statements were "untrue or materially misleading." *Id*. at *14. Defendant did not raise a similar argument on this motion and therefore the supplemental authority is not germane to the Court's analysis herein.

13

claims. *See i.e. Newman v. Bayer Corp.*, No. 22-CV-07087, 2023 WL 6318523, at *8 (S.D.N.Y. Sept. 28, 2023) ("[a] buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty 'may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies.'"); *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482-83 (S.D.N.Y. 2014) (labels and advertising conveying factual promises about a product can give rise to an actionable breach of express warranty claim). Here, where Choudhry challenges representations made on the Product labels, the exception applies and her lack of privity does not warrant dismissal of the express warranty claim under New York law.

Similarly, under California law, an exception to the privity requirement exists for reliance on "written labels or advertisements of a manufacturer." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020). This exception is only applicable to express warranties. *Id*. Wise is likewise not in privity with Defendant because she alleges only economic injury, that she purchased the Products at a Walmart location in California, and does not otherwise allege that she purchased the Product directly from Defendant. (FAC ¶ 8). Here, given that the alleged misrepresentation is on the Product packaging, Wise's failure to allege privity does not warrant dismissal of the express warranty claim under California law.

Defendant alternatively argues that the express warranty claims fail because the phrase "daily intimate wash" does not amount to an "affirmation of fact or promise." (Def. Br. at 32). Under New York law, "[a] successful breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty." *Hesse*, 463 F. Supp. 3d at 469. "Similarly, under California law, a plaintiff must prove that '(1) the seller's statements constitute an affirmation of fact or promise or a description

14

of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" (*Id*.) (citing *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 103 (2010)). "Both states provide that 'any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'" (*Id*.) (citing Cal. Com. Code § 2313; NY U.C.C. § 2-313). Here, the Court has already concluded that a reasonable consumer could plausibly understand the challenged representations to mean that the Products are suitable for daily use on the vulva.

Accordingly, Defendants' motion to dismiss the Fourth Claim for Relief for breach of express warranty is denied.

V. <u>Fifth Claim for Relief: Breach of Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>

Wise brings a claim for breach of the implied warranty of merchantability and fitness for a particular purpose under California law on behalf of herself and the California Subclass. (FAC ¶¶ 109-120).

"The California Commercial Code provides 'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.'" *Dorris*, 2024 WL 112843 at *10 (citing Cal. Com. Code § 2314). "California law . . . requires that 'a plaintiff asserting a claim for breach of the implied warranty must . . . stand in vertical contractual privity with the defendant.'" *Hesse*, 463 F. Supp. 3d at 470-71 (citing *Martin v. Tradewinds Beverage Co.*, 16-CV-09249, 2017 WL 1712533, at *11 (C.D. Cal. Apr. 27, 2017)). The exception for reliance on "written labels or advertisements of a manufacturer" does not apply to implied warranty claims. *See Lori Ostenfeld, et al v. the Laundress, LLC, et al*, No. 22-CV-10667, 2024 WL 967124, at *8 (S.D.N.Y. Mar. 5, 2024) ("California courts appear to have . . . reaffirmed the California Supreme Court's holding in *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682

(1954), that the 'written labels and advertisements' exception '[is] applicable only to express warranties.'" As discussed *supra*, Wise is not in privity with Defendant.

Accordingly, Defendant's motion to dismiss the Fifth Claim for Relief for breach of implied warranty is granted.

VI.    Sixth Claim for Relief: Unjust Enrichment

Wise asserts the Sixth Claim for Relief for unjust enrichment under California law on behalf of herself and the California Subclass. (FAC ¶ 122). Defendant argues that Wise's unjust enrichment claim must be dismissed because it is not plead "in the alternative" and California does not recognize unjust enrichment as an independent cause of action. (Reply at 13).

"[U]nder California law, 'there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution . . . . When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Kominis v. Starbucks Corp.*, No. 22-CV-06673, 2023 WL 6066199, at *9 (S.D.N.Y. Sept. 18, 2023) (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Here, Wise seeks restitution on the basis that Defendant was unjustly enriched in "retaining the revenues derived from Plaintiff Wise's and Class and California Subclass members' purchases of the Products" because "Defendant misrepresented that the Products were suitable for vulvar use and failed to disclose the Products were not suitable for vulvar use, and charged a price premium based on those representations." (FAC ¶¶ 126-127). But Plaintiffs additionally bring claims for breach of implied warranty in connection with the "contract for the sale of the defective Products." (*Id.* ¶ 112). Given that Plaintiffs have pled the existence of a contract of sale and do not otherwise allege the contract was unenforceable or rescinded, Wise cannot assert an unjust enrichment claim premised on the same underlying facts. *See i.e. Price v. L'Oreal USA, Inc.*, No. 17-CV-00614, 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) (dismissing unjust enrichment claim under California law where the claim

16

"is premised on the same facts [as the breach of contract claim] and does not dispute the enforceability or the existence of this contract.").

Accordingly, Defendant's motion to dismiss the Sixth Claim for Relief for unjust enrichment is granted.

VII.   Seventh Claim for Relief: Fraud

Plaintiffs assert claims for fraud under New York and California law. (FAC ¶¶ 128-134). Under both New York and California law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *7 (S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Claims of fraud must be pled "'with particularity,'" *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 9(b)), and thus a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent," *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (internal quotation marks omitted); *Kearns*, 567 F.3d at 1126. Put differently, a plaintiff must identify "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No. 16-CV-08990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)). "Rule 9(b) also requires plaintiffs to 'allege facts that

give rise to a strong inference of fraudulent intent.'" *Twohig*, 519 F. Supp. 3d at 166 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)); *Kearns*, 567 F.3d at 1126.

Defendant argues with respect to both New York and California law that Plaintiff failed to plead facts that give rise to a materially false representation or fraudulent intent. (Reply at 15). With respect to fraudulent intent, Plaintiffs allege that Defendant made the representations and omissions with knowledge of their falsehood. (FAC ¶ 132). Specifically, Plaintiffs allege the "[a]s a sophisticated consumer products company ostensibly specializing in female hygiene, Defendant was or should have been aware that gynecologists did not recommend the use of its Products, and had in fact advised that Defendant's Products were unsafe." (*Id.*). Plaintiffs also allege that the FAQ section of Defendant's website notes that "[m]any gynecologists still do not recommend fragrance-containing products." (*Id.*). Finally, Plaintiffs allege that those misrepresentations and omissions were intended to, and did, induce consumers to purchase the product. (FAC ¶ 133). Those allegations on their own are insufficient because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant['s] 'generalized motive to satisfy consumers' desires [or] increase sales and profits.'" *Davis v. Hain Celestial Grp.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (quoting *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013)).

Accordingly, Defendant's motion is granted as to Plaintiffs' Seventh Claim for Relief for fraud.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss Plaintiffs' First Amended Complaint.[8]

The Court GRANTS the motion to dismiss with respect to the: (i) Fifth Claim for Relief: breach of Implied Warranty of Merchantability/Fitness for a Particular Purpose; (ii) Sixth Claim for Relief: unjust enrichment; and (iii) Seventh Claim for Relief: fraud.

The Court DENIES the motion to dismiss with respect to the: (i) First Claim for Relief: violations of CLRA; (ii) Second Claim for Relief: violations of GBL § 349 (as to Choudhry only); (iii) Third Claim for Relief: violations of GBL § 350 (as to Choudhry only); (iv) Fourth Claim for Relief: breach of express warranty.

Defendant is directed to file an Answer to the First Amended Complaint within 14 days of the issuance of this Opinion and Order. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 30.

**SO ORDERED.**

Dated: White Plains, New York
March 19, 2024

PHILIP M. HALPERN
United States District Judge

---

[8] Defendant also makes an omnibus motion to dismiss the First Amended Complaint on the basis that Plaintiffs' claims—"consumer fraud class action mixed with personal injury 'irritation' claims"—run afoul of the Modernization of Cosmetics Regulation Act of 2022 ("MoCRA"). (Def. Br. at 33-34). Specifically, Defendant argues that Plaintiffs' claims based on irritation from use of the Products are preempted by MoCRA's definition of a safe cosmetic. (Reply at 14). MoCRA was enacted on December 29, 2022 and took effect on December 29, 2023. *See* Pub. L. No. 117-328, 136 Stat, 4459, H.R. 2617-1389, Subtitle E, *et seq*. There is no language in the statute regarding retroactive effect and it remains unclear whether MoCRA applies retroactively to these claims which were asserted in May 2023. In any event, even though the First Amended Complaint includes allegations that Plaintiffs experienced irritation from use of the Products (FAC ¶¶ 8, 10), Plaintiffs concede in opposition that they are *not* asserting any personal injury claims. (Pl. Br. at 30-31). Accordingly, MoCRA is not applicable to the claims asserted in this action and, therefore, is not a basis for dismissal of the First Amended Complaint.